IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFICORP, formerly PACIFIC POWER &,
LIGHT COMPANY, an Oregon corporation,

          Plaintiff,

   v.

ST. PAUL SURPLUS LINES INSURANCE
COMPANY, a Delaware corporation;
CENTURY INDEMNITY COMPANY, a
Pennsylvania corporation, AS SUCCESSOR
TO CCI INSURANCE COMPANY, AS
SUCCESSOR TO INSURANCE COMPANY
OF NORTH AMERICA, AS SUCCESSOR
TO INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA; and WESTPORT
INSURANCE CORPORATION, a Missouri
corporation, AS SUCCESSOR TO THE
MANHATTAN FIRE AND MARINE
INSURANCE COMPANY, AS SUCCESSOR
TO PURITAN INSURANCE COMPANY,

          Defendants.

Case No. 3:25-cv-00163-AB

OPINION AND ORDER

1 – OPINION AND ORDER

**BAGGIO, District Judge:**

Plaintiff PacifiCorp brings this case against its excess liability insurers, Defendants Westport Insurance Corporation ("Westport"), Century Indemnity Company ("Century"), and St. Paul Surplus Lines Insurance Company ("St. Paul"), asserting claims for breach of contract, unfair environmental claims settlement practices, and declaratory judgment. Compl. Ex. 1, ¶ 1, ECF No. 1-1. Defendants move to dismiss Plaintiff's complaint or, alternatively to compel arbitration and stay proceedings. Westport Mot. to Dismiss ("Westport Mot."), ECF No. 24; Century Mot. to Dismiss ("Century Mot."), ECF No. 25; St. Paul Notice of Joinder ("St. Paul Joinder"), ECF No. 26. For the reasons that follow, the Court grants in part and denies in part Defendants' motions.

## BACKGROUND

On January 16, 2025, Plaintiff filed its claims against Defendants Westport, Century, and St. Paul in Multnomah County Circuit Court, alleging that Defendants wrongfully failed to indemnify Plaintiff under their excess liability insurance policies (collectively, "Excess Policies") for costs Plaintiff incurred in connection with the Portland Harbor Superfund Site.[1] Compl. ¶ 1. Plaintiff alleges that the attachment point for each Excess Policy has been reached due to Plaintiff's exhaustion of its underlying insurance for the liability imposed upon Plaintiff under (1) the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and (2) agreements or contracts with environmental regulators for direct and consequential damages and expenses. *Id*. ¶¶ 1, 160.

Attached to Plaintiff's Complaint are the relevant Excess Policies at issue: Defendant St. Paul's Policy No. LCO 55 15031; Defendant Century's Policy Nos. XCP 691, XCP 813, and

---

[1] The Excess Policies at issue are excess insurance policies that were issued to Plaintiff's corporate predecessor by Defendants' corporate predecessors. *See* Compl. ¶ 1.

XCP 4114; and Defendant Westport's Policy Nos. ML 65 02 63, ML 65 18 10, and ML 65 18 80. *See* Compl. Exs. 1-7. Each policy contains an arbitration provision. *See* Compl. Ex. 1, at, 8; Ex. 2, at 6; Ex. 3, at 6; Ex. 4, at 6; Ex. 5, at 5; Ex. 6, at 5; Ex. 7, at 5. The arbitration provision in St. Paul's Policy, Westport's Policies, and one of Century's Policies (No. XCP 4114) are identical and provide as follows:

> All differences arising out of this Policy may be referred to the decision of an arbitrator to be appointed by the parties in difference, or, if they cannot agree upon a single arbitrator, to the decision of two arbitrators, one to be appointed in writing by each of the parties, or in case of disagreement between the arbitrators, to the decision of an umpire to be appointed in writing by the arbitrators before entering on the reference, and in the event of such arbitrations, unless and until an award has been made, the Company shall not be liable for any loss, and such award shall be a condition precedent to any liability of the Company or any right of action against the Company in respect of such claim. Said arbitration shall take place in the City of Portland, Oregon, and the cost of such arbitration shall be borne equally between the parties in difference.

Compl. Ex. 1, at 8; Ex. 4, at 6; Ex. 5, at 6; Ex. 6, at 6; Ex. 7, at 5. The arbitration provision in Century's Policy Nos. XCP 691 and XCP 813 differ slightly and provide as follows:

> All differences arising out of this policy shall be referred to the decision of an arbitrator to be appointed by the parties in difference or if they cannot agree upon a single arbitrator to the decision of two arbitrators, one to be appointed in writing by each of the parties or in case of disagreement between the arbitrators to the decision of an umpire to be appointed in writing by the arbitrators before entering on the reference, and unless and until an award has been made the company shall not be liable for any loss, and such award shall be a condition precedent to any liability of the company or any right of action against the company in respect of such claim.
>
> The cost of such arbitration shall be borne equally between the parties in difference. In the event of arbitration, said arbitration shall take place in the City of Portland, Oregon.

*Id*. at Ex. 2, at 6; Ex. 3, at 6. On January 30, 2025, Defendants removed this case to this Court. Notice of Removal, ECF No. 1. Now, all Defendants seek to enforce the Excess Policies' arbitration provision and dismiss Plaintiff's Complaint or, alternatively, to compel arbitration and stay proceedings. *See* Westport Mot.; Century Mot.; St. Paul Joinder.

3 – OPINION AND ORDER

**STANDARDS**

I.      **Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. While Rule 8's liberal pleading standard does

not require "detailed factual allegations," a pleading that offers only "labels and conclusions" or

"'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id*. (quoting

*Twombly*, 550 U.S. at 555, 557). The allegations must be sufficiently specific to give the

defendant "fair notice" of the claim and the grounds on which it rests. *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (per curiam).

II.     **Motion to Compel Arbitration and Stay Proceedings**

"A contract evidencing a transaction involving commerce" is subject to the Federal

Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA provides: "A written provision. . . to settle by

arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract . . . ." *Id*. When a contract is covered by the FAA, federal law governs

the question of arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015).

"By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court,

but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues

as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic*

*Systems, Inc*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*,

470 U.S. 213, 218 (1985)). The district court's role is therefore limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. *Id.*; 9 U.S.C. § 4.

## DISCUSSION

Defendants move to dismiss Plaintiff's Complaint because it fails to plead compliance with a condition precedent to a right of action under the Excess Policies—to arbitrate its claims. Westport Mot. 4-5; Century Mot. 4. Alternatively, Defendants seek to compel arbitration and stay the proceedings because the parties have entered into a valid arbitration agreement, and Plaintiff's claims are encompassed by the agreement. Westport Mot. 6; Century Mot. 4-8. As discussed in further detail below, the Court denies Defendants' request to dismiss but grants its request to compel arbitration of Plaintiff's claims and stay the proceedings.

I.    **Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

Defendants first argue that Plaintiff's failure to allege the receipt of an arbitration award—a condition precedent to a right of action for all disputes arising out of the Excess Policies—requires this Court to dismiss Plaintiff's claims. Westport Mot. 4; Century Mot. 5; *see, e.g.,* Compl. Ex. 1, at 8 ("[I]n the event of such arbitrations . . . such award shall be a condition precedent to any liability of [the Company] or any right of action against [the Company] in respect of such claim."). Generally, under Oregon law,[2] "[a]llegation of 'such performance' of or compliance with a condition precedent is necessary to state a cause of action." *Houston v.*

---

[2] All parties appear to agree that Oregon law applies to Plaintiff's claims. *See generally* Westport Mot.; Century Mot.; Pl.'s Resp. Or. Rev. Stat. § ("ORS") 465.480 provides that, "in any action between an insured and an insurer to determine the existence of coverage for costs of investigating and remediating environmental contamination . . . Oregon law shall [apply] . . . where the contaminated property to which the action relates is located within the State of Oregon." ORS 465.480(2)(a). Because this case involves contaminated property located in Oregon, *see* Compl. ¶ 1, the Court agrees that Oregon law applies.

*Briggs*, 246 Or. 439, 445 (1967) (citing *Clerin v. Eccles*, 98 Or. 345 (1920)). In *Smith v. Spizzirri,* however, the Supreme Court held that "[w]hen a federal court finds that a dispute is subject to arbitration [under the FAA], and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit . . . ." 601 U.S. 472, 475-76 (2024). Section 3 of the FAA, instead, compels the court to stay the proceedings. *Id*. at 478.

Here, despite Plaintiff's failure to allege the receipt of an arbitration award, the Court finds that it does not have discretion under *Smith* to dismiss Plaintiff's claims. While the arbitration provision at issue here is phrased as a condition precedent for filing suit, such condition only applies if the Court first finds that Plaintiff's claims are subject to arbitration under the FAA. Because Plaintiff has requested a stay in the event this Court finds Plaintiff's claims arbitrable, *see* Pl.'s Resp. in Opp'n to Mots. to Dismiss ("Pl.'s Resp.") 31, ECF No. 27. *Smith* therefore removes this Court of discretion to dismiss Plaintiff's claims, 601 U.S. at 475-76; *see* 9 U.S.C. § 2.[3] Accordingly, the Court denies Defendants' request to dismiss Plaintiff's claims.

## II.    Whether the FAA Compels Arbitration and a Stay of Plaintiff's Claims

Defendants argue, in the alternative, that the Court should compel arbitration of Plaintiff's claims under the FAA because the Excess Policies' arbitration provision is valid, and Plaintiff's claims fall within the scope of the provision. Westport Mot. 6-10; Century Mot. 4-8. Plaintiff responds that the FAA does not apply to this case under the McCarran-Ferguson Act ("MFA"), 15 U.S.C. § 1012(b), because the Oregon Environmental Cleanup Assistance Act

---

[3] Because the Court finds that dismissal of Plaintiff's claims is not proper, the Court declines to address Plaintiff's argument that the Excess Policies' condition precedent is unenforceable under Oregon law. *See* Pl.'s Resp. 21-27.

("OECAA"), ORS 465.475-465.484, which grants insureds the right to seek relief in court, governs the handling of insurance claims for environmental remediation and, thus, preempts the FAA.[4] Pl.'s Resp. 2-11. Alternatively, Plaintiff argues that the Excess Policies' arbitration provision is non-mandatory—ambiguous at best—and is, nevertheless, substantively unconscionable. *Id.* at 12-30. Plaintiff also argues that Defendant St. Paul's Excess Policy includes a suit endorsement clause that overrides the arbitration provision and requires Defendant St. Paul to submit to the jurisdiction of this Court. *See* Pl.'s Sur-Response, ECF No. 32. The Court address each argument in turn.

### A.      The MFA Does Not Preclude Application of the FAA

Plaintiff first argues that the MFA precludes application of the FAA in this case because (1) the FAA does not specifically relate to the business of insurance, (2) the OECAA was enacted for the purpose of regulating the business of insurance, and (3) the application of the FAA to this case would invalidate, impair, or supersede Oregon law. Pl.'s Resp. 2-9; *see Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (finding that the MFA "precludes application of a federal statute in face of state law 'enacted . . .for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law"). Plaintiff specifically contends that application of the FAA would impair the following OECAA provision because the provision grants insureds a statutory right to seek relief in court:

> "Any insured aggrieved by one or more unfair environmental claims settlement practices specified in this section may apply to the circuit court for the county in which the insured resides, or any other court of competent jurisdiction, to recover

---

[4] The parties appear to agree that the FAA, not the Oregon Uniform Arbitration Act, would apply if the OECAA does not reverse preempt the FAA. The Court agrees that the FAA would apply to the Excess Policies because the policies involve interstate commerce. *See* 9 U.S.C. § 2.

the actual damages sustained, together with the costs of the action, including reasonable attorney fees and litigation costs."

Pl.'s Resp. 10 (quoting ORS 465.484(4)(a)). For purposes of this motion, Defendants concede Plaintiff's first and second arguments but dispute that application of the FAA to this case might invalidate, impair, or supersede the OECAA because ORS 465.484(4)(a) permits—but does not mandate—jurisdiction in Oregon courts. Westport's Reply, 3, ECF No. 28; Century Notice of Joinder in Reply ("Century Joinder"), ECF No. 29.

In *Humana*, the Supreme Court formulated a standard to evaluate whether a federal statute might "invalidate, impair, or supersede" a state insurance law: "When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran–Ferguson Act does not preclude its application." 525 U.S. at 310. Although the parties do not cite, and the Court is not aware of, a Ninth Circuit case that addresses this issue in the context of the FAA, other circuits have found, in applying *Humana*, that the FAA only "invalidate[s], impair[s], or supersede[s]" anti-arbitration laws that *explicitly* prohibit arbitration in insurance cases. *See McKnight v. Chicago Title Ins. Co*., 358 F.3d 854, 858-59 (11th Cir. 2004) (refusing to apply the FAA to a contract governed by a state insurance law that explicitly refuses to enforce arbitration provisions in insurance contracts); *Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821, 824 (8th Cir. 2001) (same); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co*., 969 F.2d 931, 932 (10th Cir. 1992) (same).

Here, the Court finds that application of the FAA does not directly conflict or interfere with the purpose of OECAA—to promote "the fair and efficient resolution of environmental claim . . . ." ORS 465.478. Neither ORS 465.484(4)(a), nor any other provision in the OECAA, explicitly prohibits or regulates the validity of arbitration provisions in insurance policies

covered by the act. *See* ORS 465.475 *et seq*; *see also Tech. Sec. Integration, Inc. v. Philadelphia Indem. Ins. Co.*, No. 3:14-CV-01895-SB, 2015 WL 4603893, at *8 (D. Or. July 30, 2015), *aff'd*, 710 F. App'x 753 (9th Cir. 2018) (noting that the court is not aware of any statutes enacted by the Oregon legislature that prohibits arbitration in insurance contracts). And an environmental insurance policyholder is not deprived of their right to seek relief in court because they have agreed to first attempt to resolve their claims in arbitration. Had the Oregon legislature intended to provide courts with exclusive jurisdiction to hear environmental insurance claims, the OECAA would expressly so provide. *Cf. Yaqub v. Experian Info. Sols., Inc.,* No. CV 11-2190-VBFFFMX, 2011 WL 12646340, at *3 (C.D. Cal. June 10, 2011) (finding a statute that provides for the right to bring an action in a "court of competent jurisdiction" does not confer courts with exclusive jurisdiction and, therefore, does not preclude arbitration of claims arising from the statute). Accordingly, the Court finds that application of the FAA would not invalidate, impair, or supersede the OECAA, and, thus, the MFA does not reverse preempt the FAA.[5]

### B.    Plaintiff's Claims are Arbitrable Under the FAA

To compel arbitration under the FAA, the Court must find that Plaintiff's claims are arbitrable—that is, a valid arbitration agreement exists and encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130; 9 U.S.C. § 4. Plaintiff does not appear to dispute that the Excess Policies' arbitration provision encompasses its claims; rather, Plaintiff argues that the Excess Policies' arbitration provision is not valid because it (1) does not mandate arbitration and (2) is substantively unconscionable. *See* Pl.'s Resp. 11-30.

---

[5] Because the Court finds that application of the FAA would not impair the OECAA, the Court declines to address Defendants' argument that the OECAA does not affect existing contractual rights. *See* Westport's Reply 8.

          **i.**      **The Excess Policies' Arbitration Provision Mandates Arbitration**

Plaintiff argues that the plain meaning of the Excess Policies' arbitration provision is permissive and, thus, does not constitute a mandatory agreement to arbitrate.[6] Pl.'s Resp. 11-15. In the alternative, Plaintiff argues that even if the arbitration provision is not permissive, the arbitration provision is at least ambiguous and should be interpreted against Defendants as the insurers. *Id*. at 15-17.

"To interpret the parties' contract, a court should look to 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Boardman v. Pac. Seafood Grp*., 822 F.3d 1011, 1018 (9th Cir. 2016) (quoting *Wagner v. Stratton Oakmont, Inc*., 83 F.3d 1046, 1049 (9th Cir. 1996)). In Oregon, "[t]o resolve a dispute over the meaning of a contractual provision, [the] court first considers the text of the disputed provision in the context of the contract as a whole to determine whether the disputed provision is ambiguous." *Williams v. RJ Reynolds Tobacco Co*., 351 Or 368, 379 (2011). "If the meaning of the provision is clear from the text and context, then the analysis ends." *Id*. at 379-80. "If the provision is ambiguous, the court moves to the second step of the analysis, which is to consider other evidence of the parties' intent." *Id*.

Turning to the first step of the analysis, Plaintiff argues that the arbitration provision does not mandate arbitration because the term "may," as used in the provision, is typically understood

---

[6] Plaintiff concedes that Century's Policy Nos. XCP 691 and XCP 813 mandate arbitration because they state that "all differences arising out of this policy ***shall*** be referred to the decision of an arbitrator." Pl.'s Resp. 12 n.5. For purposes of this section only, the Court is referring to St. Paul's Policy, Westport's Policies, and one of Century's Policies (No. XCP 4114) when it refers to the "Excess Policies' arbitration provision." These provisions provide that "all differences arising out of this policy ***may*** be referred to the decision of an arbitrator."

as a permissive term. Pl.'s Resp., 13-15. Plaintiff also argues that interpretive principles require giving the term "may" a distinct meaning from "shall," which is also used in the arbitration provision to impose a duty. *Id.*; *see* Compl. Ex. 1, at 8 ("[S]uch [arbitration] award *shall* be a condition precedent to any liability of the Company or any right of action against the Company.") (emphasis added). Defendants, on the other hand, argue that the arbitration provision unambiguously mandates arbitration because the term "may" has been interpreted to require arbitration in similar contexts, and Plaintiff's proposed interpretation would render the provision meaningless. Westport's Reply, 11-14.

Examining the text of the arbitration provision in the context of the Excess Policies as a whole, the Court agrees with Defendants' proposed interpretation. The Excess Policies' arbitration provision is similar to the provision at issue in *R Source Corp. v. Sealevel Sys., Inc.*, 722 F. Supp. 3d 1144, 1145-46 (D. Or. 2024), [7] which provided that "[a]ny claim or controversy, arising out of this agreement, upon the request of any party involved, *may* be submitted and settled by arbitration . . . .[.]" (emphasis added). In applying Oregon law, the district court found that the term "may," read in the context of the contract as a whole, unambiguously provided that arbitration becomes mandatory once a party requests arbitration. *Id*. at 1148. Because parties can always submit disputes to arbitration, the court reasoned that any interpretation to the contrary would render the provision meaningless. *Id*. (citing *Guthrie v. State Farm Mut. Auto. Ins. Co*., 269 Or. 14 (1974)).

---

[7] The Court notes that Plaintiff argues *R Source*, among other cases cited by Defendants, is not applicable to this case because it does not involve insurance contracts. Pl.'s Resp. 15-17. Contrary to Plaintiff's assertion, the same principles apply in Oregon to the interpretation of insurance policies as compared to general contract interpretation. *See Emps. Ins. of Wausau, A Mut. Co. v. Tektronix, Inc.*, 211 Or. App. 485, 502 (2007) (finding that "[i]nsurance polices are contractual in nature and are interpreted, for the most part, like any other business contract," with exceptions for statutorily mandated terms).

Although the Excess Policies' arbitration provision at issue here does not explicitly provide that either party may request arbitration, the Court finds that, like in *R Source*, the term "may," read in the context of the policies as a whole, permits either party to compel the other to arbitrate. Such an interpretation is consistent with the dictionary definition of "may," which connotes discretion, because it suggests that each party is *permitted* but not required to request arbitration. For the same reason, this interpretation gives "may" a distinct meaning from "shall," which is used in the Excess Policies' arbitration provision to impose a mandatory duty. *See, e.g.* Compl. Ex. 1, at 8. If "may" were interpreted, as Plaintiff requests, to suggest that the Excess Policies' arbitration provision was purely optional, the provision would serve no purpose. *See R Source Corp.,* 722 F. Supp. 3d at 1148. Because Oregon rejects contract interpretations that render a contract provision superfluous, the Court finds that Plaintiff's interpretation of the arbitration provision unreasonable. *See Williams*, 351 Or at 379 ("The court must, if possible, construe the contract so as to give effect to all of its provisions."). Accordingly, the Court concludes that the text and context of the Excess Policies' arbitration provision unambiguously mandates arbitration where, as here, a party has so requested. And because this interpretation is clear from the text and context of the provision, the Court's analysis ends. *See Williams*, 351 Or. at 379.

### ii. The Excess Policies' Arbitration Provision is Not Substantively Unconscionable

Plaintiff argues, in the alternative, that the Excess Policies' arbitration provision is invalid because it is substantively unconscionable.[8] *See* Pl.'s Resp. 21-26. "Under Oregon law, unconscionability is determined based on the facts as they existed at the time the contract was

---

[8] Although Plaintiff concedes that Century's Policy Nos. XCP 691 and XCP 813 mandate arbitration, it argues that *all* Excess Policies are substantively unconscionable. *See* Pl.'s Resp., 12, n.5.

formed." *Sprague v. Quality Rests. Nw., Inc*., 213 Or. App. 521, 525 (2007). While both procedural and substantive unconscionability are relevant to the analysis, only substantive unconscionability is absolutely necessary. *Id.* at 525-26. Substantive unconscionability focuses on the one-sided nature of substantive terms and whether such terms contravene public policy. *Id.* at 525; *see Bagley v. Mt. Bachelor, Inc*., 356 Or. 543, 555 (2014) (noting that the court may rely on public policy to determine "whether a contract or contract term is sufficiently unfair or oppressive to be deemed unconscionable"). The party asserting unconscionability bears the burden of demonstrating the arbitration clause is unconscionable. *Sprague,* 213 Or. App. at 525. Plaintiff asserts that the Excess Policies' arbitration provision is substantively unconscionable because (1) it violates Plaintiff's OECCA statutory rights, and (2) it contravenes Oregon's public interest.

### a.    OECAA Statutory Rights

Plaintiff argues that the Excess Policies' arbitration provision is substantively unconscionable because it unreasonably restricts Plaintiff's access to its OECCA statutory rights—that is, Plaintiff's right under OECCA to seek redress in court. Pl.'s Resp. 23; *see* ORS 465.484(4)(a) (providing that an insured under this section "may apply to the circuit court for the county in which the insured resides, or any other court of competent jurisdiction, to recover the actual damages sustained . . . ."). In doing so, Plaintiff relies on *Lewis for Estate of Lewis v. Klamath Falls MSL LLC*, Civ. No. 1:21-cv-01270-CL, 2022 WL 2612125 (D. Or. April 12, 2022). There, the court determined that an arbitration provision in a long-term care facility agreement was unconscionable because it had one-sided terms—which suggested an inequality of bargaining power—and the Oregon Legislature had expressed a clear intent to protect

"vulnerable" long-term care residents from entering contracts that may waive their rights. *Id*. at *3.

Here, not only is Plaintiff a large corporation that can presumably protect its own rights, but, unlike in *Lewis*, the Excess Policies' arbitration provision contains no one-sided terms that would suggest an inequality in bargaining power. Although the OECAA has defined a forum in which the insureds may seek relief, Plaintiff has cited no clear legislative intent to prohibit pre-dispute mandatory arbitration agreements in environmental insurance contracts. In fact, the only authority Plaintiff cites for its position is a two-page informal bulletin issued in 2020 by the Department of Financial Regulation ("DFR"), ECF No. 27-2, which purports to prohibit pre-dispute arbitration clauses in insurance policies. This DFR bulletin, however, involves a different statutory provision and is not binding on this Court. *See JPaulJones, L.P. v. Zurich General Insurance Co. (China) Ltd.*, 533 F. Supp. 3d 999, 1007 (D. Or. 2021), *aff'd*, No. 21-35365, 2022 WL 1135424 (9th Cir. Apr. 18, 2022) ("[A] state agency bulletin is not binding authority on this Court.").

Moreover, the Excess Policies were issued anywhere from 1960-1983, Compl. ¶¶ 9, 26, 49, which is—at a minimum—sixteen years before the OECAA was enacted in 1999. Because unconscionability is based on the facts as they existed at the time the contract was formed, *see Sprague,* 213 Or. App. at 525, the enactment of the OECAA could not have retroactively rendered the Excess Policies' arbitration provision substantively unconscionable. As such, the Court finds that the Excess Policies' arbitration provision is not substantively unconscionable for unreasonably restricting Plaintiff's access to its OECAA statutory rights.

**b.** **Oregon's Public Interest**

Plaintiff next argues that the Excess Policies' arbitration provision is unconscionable because it violates Oregon's public interest. Pl.'s Resp. 23-24. Plaintiff cites both the OECAA's stated purpose to advance Oregon's substantial public interest in promoting the fair and efficient resolution of environmental claims and its provision that requires insurers to pay all defense or indemnity costs proximately arising out of the policy's terms. *Id*; *see* ORS 465.480(3)(a) ("An insurer with a duty to pay defense or indemnity costs . . . must pay all defense or indemnity costs, or both, proximately arising out of the risk pursuant to the applicable terms of its policy[.]").

Once again, Plaintiff fails to adequately explain how the Excess Policies' arbitration condition precedent violates these public interests—let alone rise to the level of substantive unconscionability. *See Bagley*, 356 Or. at 557 ("Only infrequently does legislation, on grounds of public policy, provide that a term is unenforceable."). Namely, Plaintiff assumes, without citing any authority, that arbitration—another method of dispute resolution—is less efficient than resolution of environmental disputes in court. Plaintiff further does not consider that the Excess Policies' arbitration provision only applies to preclude Defendants' liability where there is a *dispute* arising under the policies. *See, e.g.,* Compl. Ex. 1, at 8 ("All *differences* arising out of this Policy may be referred to the decision of an arbitrator[.]") (emphasis added). The provision does not nullify Defendants' liability to pay Plaintiff under the policies altogether. The Court therefore finds that Plaintiff has failed to demonstrate the Excess Policies' arbitration provision is substantively unconscionable. The Court, rather, concludes that the Excess Policies' arbitration provision represents a valid agreement to arbitrate that encompasses Plaintiff's claims. *See* 9 U.S.C. § 4.

> i.    **Defendant St. Paul's Suit Endorsement Clause Does Not Override Its Arbitration Provision**

Plaintiff also argues that Defendant St. Paul's Excess Policy includes a service of suit endorsement clause ("suit endorsement clause") that overrides the arbitration provision and requires Defendant St. Paul to submit to the jurisdiction of this Court. *See* Pl.'s Sur-Response, ECF No. 32.[9]   The suit endorsement clause Plaintiff invokes provides, in relevant part, as follows:

> It is agreed that in the event of the failure of this Company hereon, to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Compl. Ex. 1, at 19. This clause is included as endorsement number six to Defendant St. Paul's Excess Policy, and it was effectuated on the same date as the underlying policy. *Id*. Plaintiff argues that the suit endorsement clause requires Defendant St. Paul to submit to this Court's jurisdiction—and not compel arbitration—because the only way to harmonize the two provisions is to find that the arbitration provision only applies when *both* parties agree to arbitrate. Pl.'s Sur-Response 7-10. Otherwise, Plaintiff argues that the suit endorsement clause requires Defendant St. Paul to submit to the jurisdiction of Plaintiff's choice. *Id*.

Many courts (including courts in this district) have determined that arbitration provisions, such as the one at issue here, are compatible with service-of-suit endorsement clauses. *See Pac. W. Sec., Inc. v. Illinois Union Ins. Co.,* No. C12-539RSM, 2012 WL 3763551, at *3 (W.D.

---

[9] Plaintiff filed this response after Defendants' motions were fully briefed as a "Motion to Compel St. Paul to Comply with the St. Paul Policy's Service of Suit Endorsement." Because it raises an argument that is responsive to Defendants' original motion—but was omitted from Plaintiff's Omnibus Response—the Court construed it as a "Sur-Response," agreed to consider it, and allowed Defendant St. Paul to file a Sur-Reply.

Wash. Aug. 29, 2012) ("When an arbitration clause and service-of-suit clause are contained in one contract, the two support each other by creating a judicial forum for enforcing arbitration awards. The fact that the service-of-suit clause was contained in an endorsement does not change the outcome. The endorsements are part of the policy and they did not alter the rights of the parties to arbitrate."); *Montana Ass'n of Cntys. Prop. & Cas. Tr. v. Certain Underwriters at Lloyds*, No. CV 19-196-M-DLC, 2020 WL 6202673, at *3 (D. Mont. Oct. 22, 2020) (finding that a "service-of-suit clause provides a judicial avenue to compel arbitration or enforce an arbitration award"). Only when a later-added suit endorsement clause explicitly requires its terms to prevail over an arbitration provision have courts interpreted the clause to preclude enforcement of an arbitration provision. *See, e.g., Monticelli v. Homestead Ins. Co.*, No. C-96-4312-VRW, 1997 WL 88379, at *1 (N.D. Cal. Feb. 14, 1997) (finding that a later-added suit endorsement clause that explicitly changed the underlying policy terms precluded the enforcement of an arbitration provision); *Arch Specialty Ins. Co. v. Univ. of S. California*, No. 19-CV-6964 DDP (ASX), 2020 WL 11272316, at *3 (C.D. Cal. July 20, 2020) (finding that a "follow-up" contract with a suit endorsement clause that explicitly established its priority over the underlying policy precluded enforcement of an arbitration provision).

Consistent with the findings of other courts in this district, the Court finds that Defendant St. Paul's suit endorsement clause is compatible with the Excess Policy's arbitration provision, which the Court has already found mandates arbitration when a party so requests. The suit endorsement clause was executed at the same time as Defendant St. Paul's underlying Excess Policy and did not explicitly alter the rights of the parties' agreement to arbitrate. The Court therefore interprets the suit endorsement clause to more reasonably create a judicial forum to compel arbitration or enforce an arbitration award. *See Pac. W.,* 2012 WL 3763551, at *3; *cf.*

*Arch,* 2020 WL 11272316, at *3. The Court therefore concludes that the suit endorsement clause does not override Defendant St. Paul's Excess Policy's arbitration provision. Because the arbitration provisions of all Excess Policies at issue are valid and encompass Plaintiff's claims, the Court finds that the FAA requires it to compel arbitration and stay the proceedings. *See* 9 U.S.C. § 3.

## CONCLUSION

For the above-mentioned reasons, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss for Failure to State a Claim [24] [25]. The Court grants Plaintiff's request to compel arbitration and stay the proceedings and denies its request to dismiss Plaintiff's claims. The proceedings are STAYED pending the outcome of arbitration.

IT IS SO ORDERED.

DATED this  20th  day of June, 2025.


AMY M. BAGGIO
United States District Judge

18 – OPINION AND ORDER