IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFICORP, *formerly* PACIFIC POWER &
LIGHT COMPANY, *an Oregon corporation*,

        Plaintiff,

    v.

ST. PAUL SURPLUS LINES INSURANCE
COMPANY, *a Delaware corporation*;
CENTURY INDEMNITY COMPANY, *a*
*Pennsylvania corporation*, AS SUCCESSOR
TO CCI INSURANCE COMPANY, AS
SUCCESSOR TO INSURANCE COMPANY
OF NORTH AMERICA, AS SUCCESSOR
TO IDEMNITY INSURANCE COMPANY
OF NORTH AMERICA; and WESTPORT
INSURANCE CORPORATION, *a Missouri*
*corporation*, AS SUCCESSOR TO THE
MANHATTAN FIRE AND MARINE
INSURANCE COMPANY, AS SUCCESSOR
TO PURITAN INSURANCE COMPANY,

        Defendants.

Case No. 3:25-cv-00163-AB

OPINION & ORDER

**BAGGIO, District Judge:**

Plaintiff PacifiCorp brings this case against its excess liability insurers, Defendants St. Paul Surplus Lines Insurance Company ("St. Paul"), Century Indemnity Company ("Century"), and Westport Insurance Company ("Westport") (collectively, "Defendants"). Plaintiff alleges that Defendants wrongfully failed to indemnify Plaintiff under excess liability insurance policies for costs Plaintiff incurred in connection with the Portland Harbor Superfund Site. Notice of Removal Ex. 1 ("Compl.") 2-3, ECF No. 1-1. Plaintiff asserts claims for breach of contract, unfair environmental claims settlement practices, and declaratory judgment. Compl. 38-44.

On June 20, 2025, the Court granted in part and denied in part Defendants' Motions to Dismiss for Failure to State a Claim or Alternatively to Stay and Compel Arbitration, compelling arbitration and staying Plaintiff's case pending the outcome of arbitration. Opinion & Order ("O&O") 18, ECF No. 39. The Court came to this decision after interpreting the excess liability insurance policies' arbitration provisions. On July 3, 2025, Plaintiff moved for reconsideration or clarification of the Court's June 20, 2025, Opinion & Order. *See* Pl.'s Mot. Recons. or Clarification of O&O ("Pl.'s Mot."), ECF No. 40. Plaintiff largely challenges the Court's methodology for interpreting insurance policies under Oregon law and ultimately challenges the Court's interpretation. Plaintiff specifically challenges the Court's interpretation of the arbitration provision found in St. Paul's Policy, Westport's Policies, and one of Century's Policies (the "Arbitration Provision"). The Arbitration Provision reads:

> All differences arising out of this Policy may be referred to the decision of an arbitrator to be appointed by the parties in difference, or, if they cannot agree upon a single arbitrator, to the decision of two arbitrators, one to be appointed in writing by each of the parties, or in case of disagreement between the arbitrators, to the decision of an umpire to be appointed in writing by the arbitrators before entering on the reference, and in the event of such arbitrations, unless and until an award has been made, the Company shall not be liable for any loss, and such award shall be a condition precedent to any liability of the Company or any right of action against the Company in respect of such claim. Said arbitration shall take place in the City

of Portland, Oregon, and the cost of such arbitration shall be borne equally between the parties in difference.

O&O 3 (citing Plaintiff's Complaint).

For the following reasons, the Court denies Plaintiff's Motion for Reconsideration or Clarification of the Court's Opinion & Order Compelling Arbitration and Staying Proceedings.

## STANDARDS

"Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1179 (D. Or. 2008) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances . . . ." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration "may not be used to present new arguments or evidence that could have been raised earlier." *Adidas Am., Inc.*, 540 F. Supp. 2d at 1180.

## DISCUSSION

Plaintiff asks the Court to reconsider its O&O "because it rests on clear legal error." Pl.'s Reply Supp. Pl.'s Mot. ("Pl.'s Reply") 2, ECF No. 46. Plaintiff argues that (1) the Federal Arbitration Act ("FAA") is reverse preempted by Oregon Revised Statute § ("ORS") 465.480(2)(a) of the Oregon Environmental Cleanup Assistant Act ("OECAA"), and (2) under Oregon insurance law, the Arbitration Provision is optional and contingent on mutual consent. Pl.'s Mot. 4, 18. The Court disagrees with Plaintiff.

## I.    Reverse Preemption

Plaintiff argues that the Court's application of the FAA to interpret the Arbitration

Provision superseded or displaced Oregon law, thereby triggering reverse preemption under the

McCarran-Ferguson Act ("MFA"). *Id.* at 2-3. Defendants respond that Plaintiff is "trying to

blend together policy interpretation and preemption, . . . the FAA contains no provisions on

contract interpretation, . . . [and] the Court did apply Oregon law." Def. Westport's Resp. Pl.'s

Mot. ("Defs.' Resp.") 5-6, ECF No. 43 (emphasis omitted); *see also* Def. Century's Notice of

Joinder Def. Westport's Resp., ECF No. 44; Def. St. Paul's Notice of Joinder Def. Westport's

Resp., ECF No. 45. The Court agrees with Defendants.

### A.    Legal Standard

Under 15 U.S.C. § 1012(b), "[n]o Act of Congress shall be construed to invalidate,

impair, or supersede any law enacted by any State for the purpose of regulating the business of

insurance . . . unless such Act specifically relates to the business of insurance . . . ." This is

known as reverse preemption. Reverse preemption exists only if "(1) the [federal] statute does

not specifically relate to the business of insurance, (2) the acts challenged under the [federal]

statute constitute the business of insurance, (3) the state has enacted a law or laws regulating the

challenged acts, and (4) the state law would be superseded, impaired or invalidated by the

application of the federal statute." *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*,

*50 F.3d 1486, 1489 (9th Cir. 1995)* (internal quotation marks omitted); *see also Humana Inc. v.*

*Forsyth*, *525 U.S. 299, 310 (1999)* ("When federal law does not directly conflict with state

regulation, and when application of the federal law would not frustrate any declared state policy

or interfere with a State's administrative regime, the [MFA] does not preclude its application.").

///

B.    Analysis

In the Court's Opinion & Order, the Court concluded that application of the FAA to the Arbitration Provision did not invalidate, impair, or supersede the OECAA because the FAA "does not directly conflict or interfere with the purpose of [the] OECAA[,]" and because no provision of the OECAA "explicitly prohibits or regulates the validity of arbitration provisions in insurance policies . . . ." *See* O&O 8 (collecting cases and explaining that the FAA is reverse preempted only when there are state anti-arbitration laws that explicitly prohibit arbitration in insurance cases). Here, Plaintiff argues reverse preemption again, citing ORS 465.480(2)(a)—another provision of the OECAA. *See* Pl.'s Mot. 4-5 (asserting that the Court did not address ORS 465.480(2)(a) in its Opinion & Order). ORS 465.480(2)(a) provides that "in any action between an insured and an insurer to determine the existence of coverage for costs of investigating and remediating environmental contamination, . . . Oregon law shall [apply] . . . where the contaminated property to which the action relates is located within the State of Oregon." Plaintiff argues that because this statute requires the Court to apply Oregon law, and Oregon law "analyze[s] undefined insurance policy terms by evaluating plain meaning, immediate context, and broader policy context, all from the perspective of the ordinary purchaser of insurance—resolving any ambiguity in favor of the insured[,]" Pl.'s Mot. 7, the Court's application of the FAA and its "strong federal presumption in favor of arbitration" was improper, *id.* at 10; *see also id.* at 2-3 ("The Court correctly recognized that Oregon law applies when interpreting these [insurance] policies, but it nevertheless applied federal arbitration doctrine—including the FAA's pro-arbitration presumptions—in an area of law where the [OECAA] mandates that Oregon law shall be applied." (internal quotation marks omitted)). Plaintiff's argument is flawed for several reasons.

First, as the Court reasoned in its Opinion & Order, the FAA is not reversed preempted by any provision of the OECAA because no statute "explicitly prohibits or regulates the validity of arbitration provisions in insurance policies covered by the [OECAA]." O&O 8-9. The same principle applies to ORS 465.480(2)(a), which states only that "Oregon law shall [apply] . . . ." This stops far short of an explicit prohibition against, or regulation of, arbitration provisions.

Second, Plaintiff's argument that the FAA's pro-arbitration policy conflicts with "Oregon's legal standards governing interpretation of insurance policies[,]" Pl.'s Mot. 8, is legally and factually incorrect. Plaintiff's argument is legally incorrect because the FAA's pro-arbitration policy is not a strong presumption at all: it "is about treating arbitration contracts like all others, not about fostering arbitration." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)); *see also id.* ("Put differently, the pro-arbitration federal policy is to make arbitration agreements as enforceable as other contracts, but not more so." (internal quotation marks omitted)). The FAA is more of an enforcement mechanism than it is an interpretive mechanism. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (emphasis omitted)). Thus, Plaintiff's argument that the FAA's enforcement of arbitration agreements supersedes, impairs, or invalidates Oregon's standards for interpreting insurance policies is legally incorrect: "[Plaintiff] is apparently trying to blend together policy interpretation and preemption, and the result is incoherence, because the two are distinct concepts and steps in the analysis." Defs.' Resp. 5-6.

Plaintiff's argument is also factually incorrect because the Court did not apply a pro-arbitration presumption when it interpreted the Arbitration Provision. Rather, the Court applied

6 – OPINION & ORDER

Oregon law. *See* O&O 10-12 (applying Oregon law to interpret the Arbitration Provision). Plaintiff identifies the Court's rule statement from page ten of the Opinion & Order as a pro-arbitration policy: "To interpret the parties' contract, a court should look to general state law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." O&O 10 (quoting *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016)). Plaintiff argues that this policy of resolving ambiguities in favor of arbitration conflicts with Oregon insurance law, which resolves ambiguities in favor of the insured. Pl.'s Mot. 11 n.4 (citing *Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 285 Or. App. 416, 423, 395 P.3d 892, 897 (2017)). Although Plaintiff's argument could be meritorious, *see Humana, Inc.*, 525 U.S. at 310 (explaining that reverse preemption may apply if application of the federal law frustrates any declared state policy), the Court concludes that it need not resolve this question at this time because the Court held that the Arbitration Provision was unambiguous—thus avoiding the interpretive conflict. *See* O&O 12 ("[T]he Court concludes that the text and context of the . . . arbitration provision unambiguously mandates arbitration . . . .").

In sum, the Court did not commit clear error in holding that the FAA applies to the Arbitration Provision. The FAA is not reverse preempted by the OECAA, including ORS 465.480(2)(a).

## II.    Interpretation of the Arbitration Provision

Plaintiff also argues that the Court applied the incorrect standard to interpret the Arbitration Provision. Pl.'s Mot. 14-15. Plaintiff asserts that the Court erred when it held that "the same principles apply in Oregon to the interpretation of insurance policies as compared to general contract interpretation." O&O 11 n.7 (citing *Emps. Ins. of Wausau, A Mut. Co. v.*

*Tektronix, Inc.*, 211 Or. App. 485, 502-03, 156 P.3d 105, 116 (2007)). Plaintiff instead claims

that the Court should have applied the standard set forth in *Hoffman Construction Co. of Alaska*

*v. Fred S. James & Co. of Oregon*, 313 Or. 464, 836 P.2d 703 (1992) and its progeny, i.e., the

Court must:

> [1] first consider whether the phrase in question has a plain meaning, *i.e.,* whether
> it is susceptible to only one plausible interpretation. If the phrase in question has a
> plain meaning, [the court must] apply that meaning and conduct no further analysis.
> [2] If the phrase in question has more than one plausible interpretation, [the court
> must] proceed to the second interpretive aid. That is, [it must] examine the phrase
> in light of the particular context in which that phrase is used in the policy and the
> broader context of the policy as a whole. [3] If the ambiguity remains after the court
> has engaged in those analytical exercises, then any reasonable doubt as to the
> intended meaning of such a term will be resolved against the insurance company.

Pl.'s Mot. 15 (quoting *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650, 147 P.3d 329,

333-34 (2006)). Defendants respond that the Court did exactly what Oregon law requires: the

Court "explicitly examined the allegedly ambiguous term, 'may,' in the context of the policy as

[a] whole, and in that context . . . concluded that no ambiguity remained." Defs.' Resp. 9. The

Court agrees with Defendants.

Here, the Court applied the interpretative steps set out in *Hoffman*, albeit not explicitly.

The Court examined the text of the Arbitration Provision (plain meaning) in the context of the

insurance policies a whole and concluded that the term "'may' . . . permits either party to compel

the other to arbitrate." O&O 12. Thus, the Court concluded that "the text and context of the

[Arbitration Provision] unambiguously mandates arbitration where, as here, a party has so

requested." *Id.* Plaintiff raises various interpretive differences between insurance policies and

general contracts, *see* Pl.'s Mot. 14-15; however, none of these differences was relevant to the

Court's interpretation of the Arbitration Provision: the Court did not consider extrinsic evidence

in its analysis; construing policy terms from the perspective of an ordinary purchaser of

insurance is like construing contractual terms from an objective theory; and the Court found no ambiguity in the Arbitration Provision—thus resolving the interpretation as a matter of law.

Accordingly, the Court disagrees with Plaintiff that it clearly erred when it interpreted the Arbitration Provision.[1]

## III.    Request for Clarification

Plaintiff, in the event the Court declines "to reconsider and reverse its ruling" compelling arbitration, asks the Court for clarification of certain issues. *Id.* at 22. First, Plaintiff requests clarification of the implications of ORS 465.484(4)(e), which provides that "[i]n any action [for unfair environmental claims settlement practices], the court may, after finding that an insurer has acted unreasonably, increase the total award of damages to an amount not to exceed three times the actual damages." *See id.* at 11, 21-22. Specifically, Plaintiff asserts that ORS 465.484(4)(e) appears to vest exclusive authority in the Court—not an arbitrator—to determine whether an insurer has acted reasonably and whether treble damages are recoverable.[2] *Id.* at 21-22. Second, Plaintiff asks:

> If the Court determines that the ORS 465.484 claims are subject to arbitration, but the arbitrator determines that it lacks authority to determine reasonableness or award treble damages under the OECAA, does the Court intend to permit the parties

---

[1] Plaintiff also argues that under the proper legal standard for interpreting insurance policies—as set forth in *Hoffman*—the Arbitration Provision is "susceptible to only one reasonable interpretation: arbitration is optional and contingent on mutual consent." Pl.'s Mot. 18. Plaintiff also argues that to the extent the Arbitration Provision "could be reasonably interpreted in more than one way," the broader context of the provision, policy, and insurance program leads to the same interpretation—arbitration is optional and contingent on mutual consent. *See id.* at 18-21. However, as discussed above, the Court's interpretation of the Arbitration Provision was consistent with Oregon insurance law. Thus, Plaintiff's interpretative arguments are duplicative insofar as the Court already interpreted the Arbitration Provision in its Opinion & Order.

[2] Plaintiff also cites to ORS 465.484(4)(e) in support of its reverse preemption argument, arguing that because the statute purports to give exclusive authority to courts to award treble damages, it stands in direct conflict with arbitration of this issue. Pl.'s Mot. 11. For the reasons already discussed, this argument is unconvincing.

to conduct additional discovery and hold a separate trial on PacifiCorp's ORS 465.484 claims following arbitration?

*Id.* at 22. Finally, Plaintiff asks whether the Court may rule on the merits of matters the arbitrator does not address. *Id.*

Defendants respond that Plaintiff's requests for clarification are improper because each request fails to "point to some unclear point" in the Court's Opinion & Order. Defs.' Resp. 10. Further, Defendants state that Plaintiff requests "advisory opinion[s] regarding future contingencies that are not ripe, may never be ripe, are largely if not entirely hypothetical, have not been briefed, and do not amount to a case or controversy . . . ." *Id.* at 11.

The Court agrees with Defendants. Plaintiff requests this Court to rule in the hypothetical without adequate briefing, i.e., issue an advisory opinion. *See Opinion*, Black's Law Dictionary (12th ed. 2024) (defining "advisory opinion" as "[a] nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose"). And "Federal courts are constitutionally prohibited from issuing advisory opinions . . . ." *Id.* Accordingly, the Court denies Plaintiff's requests for clarification.

## CONCLUSION

The Court DENIES Plaintiff's Motion for Reconsideration or Clarification of the Court's Opinion & Order Compelling Arbitration and Staying Proceedings [40].

IT IS SO ORDERED.

DATED this _7th_ day of October, 2025.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge